**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Carlos Arias, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>Sling TV L.L.C. d/b/a Sling,<br><br>Defendant. | Civil Action No. 1:24-cv-05493 |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION**

James T. Sandnes
SKARZYNSKI MARICK & BLACK LLP
One Battery Park Plaza, 32nd Floor
New York, NY 10004
Telephone: (212) 820-7700
Email: jsandnes@skarzynski.com

Richard R. Patch (pro hac vice forthcoming)
Scott C. Hall (pro hac vice forthcoming)
Mari S. Clifford (pro hac vice forthcoming)
Alexandra M. Boxall (pro hac vice forthcoming)
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, CA 94104-5500
Telephone: (415) 391-4800
Facsmile: (415) 989-1663
Email: ef-rrp@cpdb.com
ef-sch@cpdb.com
ef-msc@cpdb.com
ef-amb@cpdb.com

# TABLE OF CONTENTS

**Page**


INTRODUCTION ..... ii

FACTUAL BACKGROUND ..... 2

A. Sling's Services and Terms of Use. ..... 2

B. Plaintiff's Customer Account and Acceptance of Sling's Terms. ..... 2

C. The Arbitration Agreement. ..... 3

D. Plaintiff Chose Not to Opt-Out of Mandatory and Binding Arbitration. ..... 6

E. Plaintiff Has Refused to Arbitrate His Claim. ..... 6

ARGUMENT ..... 6

I. CHOICE OF LAW: COLORADO AND NEW YORK LAW APPLY THE SAME STANDARDS AND PRINCIPLES TO ARBITRATION AGREEMENTS. ..... 6

II. THE COURT SHOULD COMPEL ARBITRATION OF PLAINTIFF'S CLAIMS. ..... 8

A. The Arbitration Agreement Is Governed By The FAA. ..... 8

B. The Arbitration Agreement Is Valid And Should Be Enforced. ..... 9

1. A Valid, Enforceable Written Agreement To Arbitrate Exists. ..... 10

a. Sling's Sign-Up Process in 2016. ..... 10

b. Sling's Current Sign-Up Process. ..... 12

2. Plaintiff's Claims Are Within the Scope of the Arbitration Agreement. ..... 15

C. Arbitrability Questions Are For The Arbitrator, Not The Court. ..... 16

D. The Arbitration Agreement Is Not Unconscionable. ..... 17

1. The Arbitration Agreement Is Not Procedurally Unconscionable. ..... 18

2. The Arbitration Agreement Is Not Substantively Unconscionable. ..... 18

III. PLAINTIFF'S CLAIMS MUST BE INDIVIDUALLY ARBITRATED. ..... 19

CONCLUSION ..... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acevedo v. Citibank, N.A.*,
83 Misc.3d 706 (N.Y. Sup. Ct. 2024) ....................8, 17

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995) ....................9

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) ....................19

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ....................8, 17, 19

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) ....................16

*Avant Petroleum, Inc. v. Pecten Arabian Ltd.*,
696 F. Supp. 42 (S.D.N.Y. 1988) ....................9

*Boustead Sec., LLC v. Leaping Grp. Co.*,
656 F. Supp. 3d 447 (S.D.N.Y. 2023) ....................1, 2

*Brandle Meadows, LLC v. Bette*,
84 A.D.3d 1579 (2011) ....................7

*Edmundson v. Klarna, Inc.*,
85 F.4th 695 (2d Cir. 2023) ....................10

*Epic Systems Corp. v. Lewis*,
584 U.S. 497 (2018) ....................19

*Feld v. Postmates, Inc.*,
442 F. Supp. 3d 825 (S.D.N.Y. 2020) ....................8, 10

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012) ....................11

*Garcia v. Nabfly, Inc.*,
No. 23 CIV. 1162 (PGG), 2024 WL 1795395 (S.D.N.Y. Apr. 24, 2024) ....................7

*Gillman v. Chase Manhattan*,
73 N.Y.2d 1 ....................17, 19

*Green Tree Fin. Corp.–Alabama v. Randolph*,
531 U.S. 79 (2000)....15

*Hancock v. American Tel. & Tel. Co.*,
701 F.3d 1248 (10th Cir. 2012) .... *passim*

*Howard v. Ferrellgas Partners, L.P.*,
748 F.3d 975 (10th Cir. 2014) ....9

*Johnson v. Chase Manhattan Bank USA, N.A.*,
No. 603101, 2 Misc.3d 1003(A), slip. op. (N.Y. Sup. Ct. 2004) *aff'd* (N.Y. App. Div. 2004)
....18

*Klein v. ATP Flight School, LLP*,
No. 14-CV-1522 (JFB)(GRB), 2014 WL 3013294 (E.D.N.Y. July 3, 2014)....16

*KPMG LLP v. Cocchi*,
565 U.S. 18 (2011)....9

*Lamps Plus, Inc. v. Varela*,
587 U.S. 176 (2019)....19

*Lane v. Urgitus*,
145 P.3d 672 (Colo. 2006)....7

*Macasero v. ENT Credit Union*,
533 P.3d 982 (Colo. App. 2023)....7

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017).... *passim*

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)....9

*Newton v. LVMH Moet Hennessy Louis Vuitton Inc.*,
192 A.D.3d 540 (N.Y. App. Div. 2021) ....16

*Ragone v. Atlantic Video*,
595 F.3d 115 ....18

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S 63 (2010)....16

*Sanchez v. Nitro-Lift Techs., L.L.C.*,
762 F.3d 1139 (2014)....15

*Starke ex rel. Situated v. Gilt Groupe, Inc.*.
No. 13 CIV 5497(LLS), 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014)....12, 14

*Smith v. Vmware, Inc.*,
No. 15-cv-03750-TEH, 2016 WL 54120 (N.D. Cal. Jan. 5, 2016)........................................19

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010)........................................................................................19

*THI of N.M. at Hobbs Ctr., LLC v. Patton*,
741 F.3d 1162 (2014)........................................................................................15

*Vernon v. Qwest Commc'ns Int'l, Inc.*,
857 F. Supp. 2d 1135 (D. Colo. 2012)........................................................................8

*Vernon v. Qwest Commc'ns Int'l, Inc.*,
925 F. Supp. 2d 1185 (2013) ........................................................................11, 17, 18

*Wu v. Uber Techs., Inc.*,
219 A.D.3d 1208 (N.Y. Sup. Ct. 2023) ........................................................................17

*Wu v. Uber Techs., Inc.*,
78 Misc.3d 551 (N.Y. Sup. Ct. 2022)........................................................................7, 17

**Statutes & Rules**

9 U.S.C.
§ 1..........................................................................................................8
§ 2..........................................................................................................8, 17
§ 3..........................................................................................................1, 2
§ 4..........................................................................................................8, 9

18 U.S.C. § 2710..........................................................................................1

AAA Rules, rule 14(a) ...................................................................................16

## INTRODUCTION

Plaintiff's allegations in the Complaint ("Complaint" or "Compl.") that Sling TV L.L.C. ("Sling") violated the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, through the use of certain cookies and pixels on its internet website are meritless. But regardless of whether Plaintiff's claims have merit, one thing is clear: they cannot be pursued in this Court. Plaintiff's claims are subject to mandatory and binding arbitration under Sling's Terms of Use ("Terms"), which Plaintiff – who has been a Sling subscriber for nearly eight (8) years – accepted and agreed to since signing up for Sling's services in 2016. (Compl. ¶¶ 1-2, 32-40.) The Terms were prominently displayed and hyperlinked on Sling's website and mobile application during the sign-up process for Sling services. The Terms include a clear and conspicuous arbitration provision (the "Arbitration Agreement") that requires the parties to arbitrate any and all disputes arising out of or relating to the Terms, the services, or any other aspect of their relationship on an individual basis, subject to certain limited exceptions not applicable here. The Arbitration Agreement also includes a class action waiver prohibiting the parties from bringing or participating in any class or representative actions. It further provides that any disputes concerning the enforceability, validity, or scope of the Arbitration Agreement must also be arbitrated. Plaintiff's filing of this lawsuit is a breach of his contractual commitment to arbitrate disputes with Sling.

The Federal Arbitration Act ("FAA"), which governs the Terms and the Arbitration Agreement, reflects a strong federal policy in favor of arbitration and requires this Court to enforce the parties' Arbitration Agreement, compel this matter to individual arbitration (including any questions of arbitrability), dismiss the class claims, and stay this litigation.[1]

---

[1] These proceedings should be stayed pending arbitration of Plaintiff's claims. Section 3 of the FAA provides that "upon being satisfied that the issue involved in such suit or proceeding is

Alternatively, if the Court decides to address arbitrability, it should find the Arbitration Agreement valid and enforceable, as it provides Plaintiff with reasonable notice, opt-out rights, and various benefits. Sling therefore requests that the Court compel individual arbitration of Plaintiff's claims.

## FACTUAL BACKGROUND

### A. Sling's Services and Terms of Use.

Sling is a provider of online streaming services that allow users to watch live and on-demand television channels and programs over the internet, including through computers, smartphone apps, smart TVs, tablets, and other streaming devices. (Declaration of Ashley Hastings in Support of Defendant's Motion to Compel Arbitration ("Hastings Decl.") ¶ 5.) Customers who wish to subscribe to certain services offered by Sling must register and set up an account ("Customer Account"). (*Id.*) Sling provides its services under certain terms and conditions set forth in Sling's Terms, as updated or amended from time to time. (*Id.* ¶ 4, Ex. A.)

### B. Plaintiff's Customer Account and Acceptance of Sling's Terms.

Plaintiff opened a Customer Account with Sling on December 13, 2016, through Sling's Website. (Hastings Decl., ¶ 10(b), Ex. J.) To register and set up his Customer Account, Plaintiff was required to agree to Sling's Terms. (*Id.*, ¶ 10(d), Ex. L.) In December 2016, as is the case today, once a customer enters his or her contact information, selects a programming package, and enters billing information, a hyperlink to Sling's "Terms of Use" is displayed immediately

---

referable to arbitration," the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3; *see Boustead Sec., LLC v. Leaping Grp. Co.*, 656 F. Supp. 3d 447, 452 (S.D.N.Y. 2023) ("The FAA 'mandate[s] a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested."). (citation omitted). As discussed in this brief, Plaintiff's claims are "referable to arbitration," and this proceeding must therefore be stayed. 9 U.S.C. § 3.

above the "Finish & Submit" button on the checkout page, which is the final step in the account registration process. (Hastings Decl., ¶¶ 7, 10(d)–(e), Exs. F, G, and L.) The phrase "Terms of Use" appears in a different color to the surrounding text (bright blue) and hyperlinks to a standalone page on Sling's Website setting out in full Sling's Terms in effect at that time. (*Id.*) Notably, when Plaintiff opened his customer account in December 2016, new subscribers were also required to affirmatively select a checkbox confirming, among other things, their agreement to Sling's "Terms of Use and Privacy Policy" to complete the registration process. (Hastings Decl., ¶ 10(d), Ex. L.) Thus, in December 2016, a new subscriber could not click the "Finish & Submit" button until the checkbox confirming their agreement to Sling's Terms had been selected. (*Id.*)

A copy of the Terms in effect at the time Plaintiff signed up for Sling services is attached as Ex. K to the Hastings Declaration. (*Id.*, ¶ 10(c), Ex. K.) The Terms agreed to by Plaintiff contain a clear and conspicuous agreement to arbitrate claims between Plaintiff and Sling and also notify Plaintiff that Sling updates its Terms from time to time and that Plaintiff's continued use of Sling services constitutes acceptance of those updates. (*Id.*) Plaintiff has accepted updates to Sling's Terms by continuing to use and pay for Sling's services and maintaining an active Customer Account with Sling for the past eight years. (*Id.*, ¶ 10(a), Ex. I.) Accordingly, Plaintiff is bound by Sling's current Terms, and the Terms in effect as of the date of the filing of this Complaint apply to this dispute.

### C. <u>The Arbitration Agreement.</u>

The Arbitration Agreement is set out in Section 11 of the current Terms. (Hastings Decl., Ex. A.) It provides for mandatory and binding arbitration in the event that a dispute between Sling and a customer cannot be resolved informally and/or is not capable of being resolved in small claims court. In relevant part, the Arbitration Agreement reads as follows:

> **Section 11: DISPUTE RESOLUTION, MANDATORY AND BINDING ARBITRATION AND CLASS ACTION WAIVER (THE "ARBITRATION PROVISION")**
>
> **BEFORE WE GET STARTED, YOU SHOULD KNOW THAT AN ARBITRATION PROVISION AND CLASS ACTION WAIVER APPLIES TO THIS AGREEMENT. IF WE CAN'T WORK OUT A DISPUTE WITH YOU, THIS AGREEMENT REQUIRES ARBITRATION OR SMALL CLAIMS COURT AND DOESN'T ALLOW CLASS ACTIONS. YOU'LL HAVE TO WAIVE YOUR ABILITY TO BRING A CLASS ACTION, OR TO HAVE A TRIAL BY JURY.**
>
> A. Mandatory Binding Arbitration. If you and [Sling] have a Dispute (as defined below), [Sling] will first try to resolve it informally with you. If we can't, then you and [Sling] agree to resolve the Dispute either through binding arbitration or in small claims court, instead of courts of general jurisdiction (i.e. courts other than small claims courts), unless the Dispute is covered by one of the few exceptions we describe below, under "Exceptions." You acknowledge and agree that, if you or [Sling] start an action in small claims court to resolve a Dispute, but the small claims court can't resolve the Dispute for any reason (for example, if it does not have jurisdiction over the claim), then the Dispute can only be resolved by arbitration.
>
> * * *
>
> BY ENTERING INTO THIS AGREEMENT, YOU AND [SLING] ARE EACH AGREEING TO WAIVE THE RIGHT TO A TRIAL BY JURY OR BY A JUDGE (OTHER THAN IN SMALL CLAIMS COURT), EXCEPT WHERE PROHIBITED OR OTHERWISE PROVIDED IN THIS AGREEMENT.

(Hastings Decl., Ex. A at § 11(A) (emphasis original).)

Plaintiff filed this Complaint without attempting to resolve his claim with Sling informally, in breach of the Terms. (Declaration of Scott Hall in support of Defendant's Motion to Compel Arbitration ("Hall Decl."), ¶ 2.) The Arbitration Agreement applies to all "Disputes" between Sling and its customers, subject to limited exceptions. "Disputes" is defined broadly in the Arbitration Agreement to include:

> any and all claims, disputes, or disagreements you and [Sling] currently have, might have in the future, or had in the past. A Dispute can be about anything related to our Services, and can involve Terms of Use, Promotional Terms, any type of law (such as a statute, regulation or ordinance), tort (examples are fraud,

> misrepresentation, fraudulent inducement, negligence or any other intentional tort) or anything else that courts or arbitrators have the authority to decide.

(Hastings Decl., Ex. A at § 11(B).)

"Disputes" is expressly defined to include any dispute regarding whether the Arbitration Agreement is valid or enforceable, and its scope. (*Id.*) The Arbitration Agreement also contains a non-exhaustive list of examples of matters that may be the subject of a "Dispute," including:

> (a) The Services, the Promotional Terms, or any other agreement between you and us;
>
> (b) [Sling's] products or services;
>
> * * *
>
> (d) [Sling's] collection, retention and/or disclosure of your personally identifiable information.

(*Id.*)

The Arbitration Agreement also contains a class action waiver that prohibits the parties from bringing or participating in any class or representative actions in relation to a Dispute:

> NEITHER YOU NOR [SLING] SHALL BE ENTITLED TO JOIN OR COMBINE CLAIMS MADE BY, OR AGAINST, OTHER PEOPLE OR OTHER ENTITIES, OR BRING A CLAIM AS A REPRESENTATIVE, INCLUDING BUT NOT LIMITED TO, AS PART OF A CLASS ACTION OR AS A "PRIVATE ATTORNEY GENERAL" FOR ANY DISPUTE.

(Hastings Decl., Ex. A at § 11(G) (emphasis original).) The Arbitration Agreement also prohibits the parties from bringing an action in a court of general jurisdiction, other than in certain limited circumstances. (*Id*. at § 11(A).) Each party expressly agrees to waive a right to a trial by jury or judge. (*Id.*)

Subsections to the Arbitration Agreement also address the procedures for informal dispute resolution, arbitration (including costs and the arbitrator's award), and small claims, and

a right to opt-out (as explained further below). (Hastings Decl., Ex. A at §§ 11(C), (D), (H), (J) and (K).)

### D. <u>Plaintiff Chose Not to Opt-Out of Mandatory and Binding Arbitration.</u>

The Arbitration Agreement gives customers a right to opt-out of the Arbitration Agreement within 30 days of opening a Customer Account or starting to use Sling's services. (Hastings Decl., Ex. A at § 11(J).) Customers may also opt to reject subsequent material changes to the Arbitration Agreement within 30 days of being notified of such change. (*Id.*, at §11(K).) In nearly eight years as a subscriber, Plaintiff never exercised his contractual right to opt-out of the Arbitration Agreement, or any changes thereto. (Declaration of David Laslo in Support of Defendant's Motion to Compel Arbitration ("Laslo Decl."), ¶ 4.)

### E. <u>Plaintiff Has Refused to Arbitrate His Claim.</u>

Following the filing of the Complaint on July 19, 2024, Sling's counsel contacted Plaintiff's counsel to notify Plaintiff's counsel that Plaintiff's claims were subject to the Arbitration Agreement. Plaintiff's counsel acknowledged awareness of the Arbitration Agreement but asserted that it was not enforceable. Despite several meet and confer discussions and communications between the parties regarding the arbitrability of Plaintiff's claims, Plaintiff has refused to agree to arbitrate his claims. (Hall Decl., ¶ 3.)

## <u>ARGUMENT</u>

## I. <u>CHOICE OF LAW: COLORADO AND NEW YORK LAW APPLY THE SAME STANDARDS AND PRINCIPLES TO ARBITRATION AGREEMENTS.</u>

The Arbitration Agreement provides that the Applicable Law for Disputes in arbitration will be "the law of the state that your billing address is in (according to [Sling's] records on the date the Dispute Resolution Notice is sent)[.]" (Hastings Decl., Ex. A. at § 11(I).) If the Dispute does not go to arbitration (or is found to be invalid), the Arbitration Agreement states that "the

laws of Colorado will apply to the [Terms] . . . and everything relating to these terms[.]" (*Id*.) Relevantly, the question of "[w]hether the Arbitration Provision is valid or enforceable, and what it covers," is defined as a Dispute that is subject to arbitration. (*Id.* at § 11(B).)

Plaintiff's billing address is in New York as of the date he filed his Complaint. (Hastings Decl., ¶ 10(a), Ex. I.) However, the Terms state that Colorado law will apply if the Dispute, including questions of arbitrability, does not go to arbitration. (*Id*., Ex. A at §§ 11(B) and (I).) Therefore, in this instance, because Plaintiff sought to bring his claims in court rather than in arbitration, Colorado law applies. But this distinction between applicable laws does not affect this motion's outcome, because Colorado and New York law apply the same standards and principles to determine the validity and scope of arbitration agreements.

Both New York and Colorado law align with the FAA's strong federal policy favoring arbitration, consistently recognizing that arbitration is a favored method of dispute resolution. *See, e.g., Lane v. Urgitus*, 145 P.3d 672, 678 (Colo. 2006); *Brandle Meadows, LLC v. Bette*, 84 A.D.3d 1579, 1580 (2011). Both states apply similar standards for enforcing web-based contracts, focusing on whether the party had reasonable notice of the terms and manifested assent, either through action or inquiry notice. *Macasero v. ENT Credit Union*, 533 P.3d 982, 988 (Colo. App. 2023); *Garcia v. Nabfly, Inc.*, No. 23 CIV. 1162 (PGG), 2024 WL 1795395, at *8 (S.D.N.Y. Apr. 24, 2024). Both jurisdictions generally enforce "clickwrap" agreements, which require users to affirmatively accept terms by clicking. *Hancock v. American Tel. & Tel. Co.*, 701 F.3d 1248, 1256 (10th Cir. 2012); *Wu v. Uber Techs., Inc.*, 78 Misc.3d 551, 587 (N.Y. Sup. Ct. 2022)). And both jurisdictions enforce "browsewrap" agreements, provided the user had actual or constructive notice of the terms. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75–76

(2d Cir. 2017);[2] *Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1149, 1157 (D. Colo. 2012)). Finally, it is the law of the land to uphold class action waivers in arbitration agreements (unless proven invalid under state law). *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011)).

Therefore, the choice of law issue does not affect the enforceability of the Arbitration Agreement, and the law of both states supports Sling's position that Plaintiff assented to the Arbitration Agreement.

## II. THE COURT SHOULD COMPEL ARBITRATION OF PLAINTIFF'S CLAIMS.

### A. The Arbitration Agreement Is Governed By The FAA.

Under the FAA, 9 U.S.C. § 1 *et seq*., a party may seek a court order compelling arbitration where another party refuses to arbitrate. *Id*. § 4. The FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" *Id*. § 2. Indeed, there is a "liberal federal policy favoring arbitration." *AT&T Mobility LLC*, 563 U.S. at 346 (citation omitted). The FAA "reflects an 'emphatic federal policy in favor of arbitral dispute

[2] Although *Meyer* was decided under California law, the Court concluded that New York applies "substantially similar rules for determining whether the parties have mutually assented to a contract term." *Meyer*, 868 F.3d at 74 (internal quotation marks and citation omitted.) Similarly, the court in *Acevedo v. Citibank, N.A.*, 83 Misc.3d 706, 725 n.6 (N.Y. Sup. Ct. 2024), lacking relevant New York precedent on whether an FAA choice-of-law provision in an arbitration agreement is sufficient on its own, looked to California caselaw, observing that "Just like California, New York recognizes that arbitration is a matter of contract."). Similarly, in *Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 830–32 (S.D.N.Y. 2020), the court applied *Meyer's* principles to enforce an arbitration clause, finding New York and California law substantially similar on the enforceability of contracts. The court emphasized that Postmates had provided sufficient notice of the arbitration provision and that plaintiff's continued use of the service constituted assent to its terms, reinforcing the idea that mutual assent can be established through clear and conspicuous terms coupled with continued use of the service.

resolution.'" *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (citation omitted). Under the FAA, courts must "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 22 (1983).

By its plain terms, the Arbitration Agreement is governed by the FAA. It states, "You and Sling TV both agree that the Federal Arbitration Act (the "FAA") governs this Arbitration provision." (Hastings Decl., Ex. A at § 11(A.)) Moreover, Plaintiff acknowledges that his alleged use of Sling involves interstate commerce, alleging in his complaint that Sling is a "'video tape service provider' because it . . . 'engag[es] in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials.'" (Compl. ¶¶ 14-15.) In addition, courts in various circuits, the instant one included, have recognized that the FAA covers online transactions and entertainment. *See, e.g.*, *Hancock*, 701 F.3d at 1256–57 (enforcing arbitration provision in online service agreement); *Meyer*, 868 F.3d at 74–75 (same). The FAA also applies where, as here, the parties are citizens of different states. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 268–69, 281–82 (1995) (holding that the FAA preempts state law and applies to contracts involving interstate commerce). Finally, by accepting the Terms, the parties stipulated that the FAA governs the Arbitration Agreement. (Hastings Decl., Ex. A at § 11(A).)

**B. <u>The Arbitration Agreement Is Valid And Should Be Enforced.</u>**

Under the FAA, arbitration may be compelled if the following three elements are shown: 1) a written agreement to arbitrate, 2) a dispute within the scope of the arbitration agreement, and 3) a refusal to arbitrate. *See* 9 U.S.C. § 4; *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014); *Avant Petroleum, Inc. v. Pecten Arabian Ltd.*, 696 F. Supp. 42, 44 (S.D.N.Y. 1988) ("To grant a petition to compel arbitration under Section 4, the court must

determine that (1) the dispute is covered by a written agreement to arbitrate, and (2) the petitioner has been aggrieved by the respondent's failure, neglect or refusal to arbitrate."). All requirements are met here.

**1. A Valid, Enforceable Written Agreement To Arbitrate Exists.**

Plaintiff formed an agreement with Sling when he signed up for Sling services online on December 13, 2016. (Hastings Decl., ¶ 10(b), (d).) Whether a consumer assented to a web-based contract via inquiry notice involves examining whether: 1) the website provided reasonably conspicuous notice of the terms to which the consumer would be bound; and 2) the consumer took some action, such as clicking a button or checking a box, that unambiguously manifested his or her assent to those terms. *Meyer*, 868 F.3d at 75; *Hancock*, 701 F.3d at 1256–57 (upholding the enforceability of online arbitration provisions where the terms were reasonably conspicuous and the user unambiguously manifested assent). Courts have found notice of terms to be "reasonably conspicuous" where notice and hyperlinks are "in a darker, bolder font than the rest of the text" surrounding them and are "spatially coupled" with the sign-up button, such that they are "directly above" the sign-up options, as well as "temporally coupled," such that the notice is provided at the time of account creation. *Feld,* 442 F.Supp.3d at 831. This is true even if the hyperlinks are in a smaller font size relative to other surrounding text. *Id.*; *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 706 (2d Cir. 2023) (citation omitted). A consumer need not actually click on the hyperlink or read the terms to be bound by them as long as they were reasonably communicated to the consumer. *Feld,* 442 F. Supp. 3d 825 (citing *Meyer*, 868 F.3d at 76).

**a. Sling's Sign-Up Process in 2016.**

As explained above, the sign-up process that Plaintiff completed in 2016 required him to affirmatively check a box confirming his agreement to Sling's "Terms of Use and Privacy

Policy," prominently displayed and hyperlinked on the activation page. (Hastings Decl., ¶ 10(d), Ex. L.)




*Figure 1: Excerpt of Hastings Decl., Ex. L*

Plaintiff unambiguously manifested his assent to the Terms by affirmatively checking a box *and then* separately clicking "Finish & Submit" on the activation page. By doing so, Plaintiff indicated that he had read and agreed to the Terms, which were clearly referenced and linked on the same page (*see* Fig. 1 above). Plaintiff could not complete the sign-up process without checking the box *and* clicking the button, constituting a clear and affirmative act of consent. (*Id.* ¶ 10(d), Ex. L.) The Terms contained the Arbitration Agreement in a clear and conspicuous manner, and also provided Plaintiff with an option to opt-out of arbitration within 30 days of creating his account. (*Id.*, Ex. A at § 11(J).) Plaintiff did not opt-out of arbitration (Laslo Decl. ¶ 4), and he cannot now claim that he did not assent to the Arbitration Agreement. *Hancock*, 701 F.3d at 1256–57.

Plaintiff's assent to the Terms in 2016 constitutes a classic example of a "clickwrap" agreement, which courts consistently enforce under both Colorado and New York law, as well as under the FAA. *See, e.g., Vernon v. Qwest Commc'ns Int'l, Inc.*, 925 F. Supp. 2d 1185, 1191 (2013); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837 (S.D.N.Y. 2012); *Meyer*, 868 F.3d at 75–76.

### b. Sling's Current Sign-Up Process.

Even if the Court were to disregard the 2016 sign-up process and evaluate the enforceability of Sling's current sign-up process, the result is the same. The current sign-up process also creates an enforceable arbitration agreement based on clearly manifesting assent to clear and conspicuous terms. The current sign-up process is similar to one upheld in *Starke ex rel. Situated v. Gilt Groupe, Inc.*. No. 13 CIV 5497(LLS), 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014). In *Starke*, customers were provided with notice of the terms and conditions via hyperlinks during the registration process. The court determined that clicking the button to complete the registration constituted assent to those terms. *Id*., at *7.

Similarly, customers who wish to subscribe to Sling's services go through a three-step process. First, customers must enter their personal information on a registration page that prominently displays a hyperlink to the Terms in a contrasting blue font under the "Continue" button. (Hastings Decl., ¶ 7(a), Exs. B, C).




*Figure 2: Excerpt of Hastings Decl., Ex. B ('Register' webpage accessed via desktop computer)*




*Figure 3: Excerpt of Hastings Decl., Ex. C ('Register' webpage accessed via mobile device)*

Second, customers then select the programming package they wish to subscribe to. (Hastings Decl., ¶ 7(b), Exs. D, E.) Third, the Terms are hyperlinked a second time on the checkout page in the sign-up process above the "Finish & Submit" button. (Hastings Decl., ¶ 7(c), Exs. F, G.)




*Figure 4: Excerpt of Hastings Decl., Ex. F ('Checkout' webpage accessed via desktop computer)*




*Figure 5: Excerpt of Hastings Decl., Ex. G ('Checkout' webpage accessed via mobile device)*

Each hyperlink to the Terms leads to a separate webpage that contains the full text of the Terms, including the Arbitration Agreement in a bold-faced heading. (Hastings Decl., ¶ 7(a) and (c) and Ex. A.)

Thus, by the time a consumer clicks "Finish and Submit" to sign up for Sling's services, they have *twice* been presented with clear and conspicuous hyperlinks to the Terms and *twice* clicked buttons stating that they have read and agree to those Terms. Customers cannot complete the sign-up process without clicking the "Finish & Submit" button, which constitutes an affirmative and unambiguous act of consent to the Terms, including the Arbitration Agreement. (*Id.*, ¶ 7(c).) The current sign-up process therefore provides customers with reasonable notice of the Terms and requires them to take an affirmative action to indicate their assent to those terms. *Starke*, 2014 WL 1652225, at *7 ("Regardless of whether he actually read the contract's terms, Starke was directed exactly where to click in order to review those terms, and his decision to click the '"Shop Now'" button represents his assent to them."). The current sign-up process also

allows customers to opt out of the Arbitration Agreement within 30 days of creating an account, as explained in the Terms. (Hastings Decl., Ex. A at § 11(J).)

In sum, under either sign-up process, Plaintiff formed a valid and enforceable agreement to arbitrate with Sling when he signed up for Sling services online in December 2016.

**2. Plaintiff's Claims Are Within the Scope of the Arbitration Agreement.**

The claims asserted here clearly fall within the scope of the Arbitration Agreement. "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.–Alabama v. Randolph*, 531 U.S. 79, 91 (2000) (citation omitted); *THI of N.M. at Hobbs Ctr., LLC v. Patton*, 741 F.3d 1162, 1165, 1169 (2014). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1145 (2014) (citing *Moses H. Cone Mem'l Hosp*., 460 U.S. at 24–25). The parties here agreed to arbitrate:

> "any and all claims, disputes, or disagreements you and Sling TV currently have, might have in the future, or had in the past. A Dispute can be about anything related to our Services, and can involve Terms of Use, Promotional Terms, any type of law (such as a statute, regulation or ordinance), tort (examples are fraud, misrepresentation, fraudulent inducement, negligence or any other intentional tort) or anything else that courts or arbitrators have the authority to decide."

(Hastings Decl., Ex. A at § 11(B).)

The Arbitration Agreement applies to Sling and its affiliates and governs the use of its websites and applications, which, along with any other 'Sling TV' branded memberships, features, functionalities, products, services, and any and all content contained therein, constitute the "Services." (Hastings Decl., Ex. A.) Plaintiff's claims in the Complaint are based on allegations that Sling violated the VPPA by disclosing his personal viewing information on Sling's "Website and apps" (including sling.com and/or watch.sling.com) to third parties, including Facebook, without his consent. (Compl. ¶¶ 1-2, 15, 32-40.) Because these claims

arising out of Sling's Website and apps involve Sling's "Services," the Arbitration Agreement therefore covers Plaintiff's claims. (Hastings Decl., Ex. A at § 11(B).) The Arbitration Agreement only lists two exceptions to arbitration: 1) disputes involving unauthorized receipt of services; and 2) claims seeking public injunctive relief. (*Id.* at §11(M).) Plaintiff does not assert any claim for public injunctive relief in his complaint, and the dispute does not involve unauthorized receipt of services as it is rooted in the VPPA. Therefore, there is no exception that applies to his claims. Because the parties formed an arbitration agreement that covers all claims except for those with respect to public injunctive relief, the Court should issue an order compelling arbitration.

### C. Arbitrability Questions Are For The Arbitrator, Not The Court.

The parties have delegated questions of arbitrability to the arbitrator, so the Court need not address the Arbitration Agreement's enforceability or validity. The Arbitration Agreement contains an arbitration clause, which creates "a presumption of arbitrability." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Courts cannot override the parties' contract and decide arbitrability when the agreement delegates it to the arbitrator. *Newton v. LVMH Moet Hennessy Louis Vuitton Inc.*, 192 A.D.3d 540, 541 (N.Y. App. Div. 2021). The Arbitration Agreement incorporates the Consumer Arbitration Rules of the American Arbitration Association ("AAA Rules"), which give the arbitrator the power to rule on his or her own jurisdiction and validity of the Arbitration Agreement.[3] *See* AAA Rules, rule 14(a). The Supreme Court and lower courts have held that this shows the parties' clear and unmistakable intent to delegate arbitrability. *See, e.g., Rent-A-Center, W., Inc. v. Jackson*, 561 U.S 63, 68–69

[3] The Defendant requests the Court take judicial notice of the AAA Rules. *See, e.g., Klein v. ATP Flight School, LLP*, No. 14-CV-1522 (JFB)(GRB), 2014 WL 3013294, at *10 n.6 (E.D.N.Y. July 3, 2014). The AAA Rules are available from the website of the American Arbitration Association at <https://adr.org/sites/default/files/Consumer-Rules-Web_0.pdf>.

(2010). The agreement also defines "Dispute" broadly to include any and all claims, disputes, or disagreements between the parties, and specifically states that challenges to the agreement's validity and scope are Disputes. These provisions confirm that the parties intended to delegate all arbitrability issues to the arbitrator, and not to the Court.

### D. The Arbitration Agreement Is Not Unconscionable.

Should the Court disagree that the parties delegated the issue of arbitrability to the arbitrator, and decide to assess the validity of the Arbitration Agreement, the Court should find the Arbitration Agreement enforceable and not unconscionable. The FAA mandates that courts enforce arbitration agreements unless they are invalid or unenforceable under state contract law principles. 9 U.S.C. § 2; *AT&T Mobility LLC*, 563 U.S. at 339. State laws that single out or disfavor arbitration provisions are preempted by the FAA. *Id*. at 341–42.

Both Colorado and New York law require a showing of procedural and substantive unconscionability to invalidate a contract.[4] *See, e.g., Vernon*, 925 F. Supp. 2d at 1192; *Gillman v. Chase Manhattan*, 73 N.Y.2d 1, 10. Procedural unconscionability concerns the formation of the contract and the parties' choice and bargaining power. *See, e.g., Vernon*, 925 F. Supp. 2d at 1192; *Gillman*, 73 N.Y.2d at 10. Substantive unconscionability concerns the terms of the contract and their fairness and oppressiveness. *See, e.g., Vernon*, 925 F. Supp. 2d at 1192; *Gillman*, 73 N.Y.2d at 10. The party challenging the arbitration agreement has the burden of

---

[4] Sling contends that, because unconscionability is an issue of arbitrability, and arbitrability is delegated to the arbitrator, any question of unconscionability must also be arbitrated. *Wu*, 78 Misc.3d at 577 n.8 577 (Arbitrability includes whether an agreement is enforceable due to questions about its unconscionability); *Acevedo*, 83 Misc.3d at 746–47 ("the threshold issue of the Arbitration Agreements' unconscionability must be arbitrated."; *Wu v. Uber Techs., Inc.*, 219 A.D.3d 1208, 1209 (N.Y. Sup. Ct. 2023) ("Plaintiff's arguments disputing the validity of the terms and raising unconscionability must be decided by the arbitrator, because the terms contain a delegation provision that plaintiff did not specifically challenge." (citing *Rent-A-Center*, 561 U.S. at 72.)

proving unconscionability. *See, e.g.*, *Vernon*, 925 F. Supp. 2d at 1192; *Ragone v. Atlantic Video*, 595 F.3d 115, 121. Plaintiff cannot meet this burden here.

**1. The Arbitration Agreement Is Not Procedurally Unconscionable.**

The Arbitration Agreement is not procedurally unconscionable. Sling provided Plaintiff with reasonable notice of the Arbitration Agreement and an opportunity to opt out. In 2016, Plaintiff affirmatively selected a checkbox agreeing to Sling's "Terms of Use and Privacy Policy," which were prominently displayed and hyperlinked on the activation page (Hastings Decl., ¶ 10(d), Ex. L.) The Terms clearly incorporated the Arbitration Agreement and allowed Plaintiff to opt out within 30 days (*Id.*, Ex. A at § 11(J).) Plaintiff did not opt out and cannot now argue lack of assent. *See Hancock*, 701 F.3d at 1257 (upholding arbitration agreement where the provision was clearly labeled and not hidden in fine print); *Johnson v. Chase Manhattan Bank USA, N.A.*, No. 603101, 2 Misc.3d 1003(A), slip. op. at 9 (N.Y. Sup. Ct. 2004) *aff'd* (N.Y. App. Div. 2004) (finding Plaintiff's claim of unconscionability unavailing as the Arbitration Agreement was not presented on a "take it or leave it" basis; it allowed the plaintiff the opportunity to opt out of arbitration.).

Even if the Court were to disregard the 2016 sign-up process and evaluate the enforceability of Sling's current sign-up process, the result is the same. The current process also provides reasonable notice and a 30-day opt-out period. (Hastings Decl., Ex. A at § 11(J).) Thus, Plaintiff had a meaningful choice and cannot claim coercion or deception in agreeing to the Arbitration Agreement.

**2. The Arbitration Agreement Is Not Substantively Unconscionable.**

In addition, the Arbitration Agreement is not substantively unconscionable as it is mutual—*i.e.*, both Plaintiff and Sling (as well as its affiliates and subsidiaries) are required to arbitrate claims. "This question entails an analysis of the substance of the bargain to determine

whether the terms were unreasonably favorable to the party against whom unconscionability is urged." *Gillman*, 73 N.Y.2d at 12 (citations omitted). Here, the Arbitration Agreement is neither harsh nor one-sided. It incorporates the neutral AAA Rules, which ensure fair procedures, including a neutral arbitrator, written decisions, and discovery. (Hastings Decl., Ex. A, § 11(D).) This precludes any finding of substantive unconscionability. *See Smith v. Vmware, Inc.*, No. 15-cv-03750-TEH, 2016 WL 54120, at *5 (N.D. Cal. Jan. 5, 2016) (rejecting argument that AAA Rules are substantively unconscionable).

The class waiver provisions are enforceable as well. *AT&T Mobility LLC*, 563 U.S. at 344. The Arbitration Agreement benefits consumers by offering multiple dispute resolution options, allowing the consumer to choose the best path based on the size of the dispute, including small claims court. (Hastings Decl., Ex. A, §§11(A), (H).) Therefore, the Arbitration Agreement is fair, reasonable, and enforceable, and Plaintiff is bound by it based on his creation of a Sling account.

## III. PLAINTIFF'S CLAIMS MUST BE INDIVIDUALLY ARBITRATED.

The Supreme Court has held that class action waivers in arbitration agreements are enforceable and do not violate the FAA or any federal statute. *See, e.g.*, *Epic Systems Corp. v. Lewis*, 584 U.S. 497, 509 (2018); *AT&T Mobility LLC*, 563 U.S. at 344–52; *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233–38 (2013). The Court has also held that courts may not compel class arbitration unless there is a contractual basis for concluding that the parties agreed to it. *See, e.g.*, *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 182–85 (2019); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684–87 (2010). Here, there is no contractual basis for concluding that the parties agreed to class arbitration, as the Arbitration Agreement clearly and unmistakably precludes it. Therefore, the Court should not compel class arbitration and should dismiss Plaintiff's class claims.

## CONCLUSION

For the foregoing reasons, Sling requests that the Court order Plaintiff to submit his claim to individual binding arbitration, dismiss his class claims, and stay the litigation pending the conclusion of the arbitration process.

DATED: October 30, 2024

By: ***/s James Sandnes***

James T. Sandnes
SKARZYNSKI MARICK & BLACK LLP
One Battery Park Plaza, 32nd Floor
New York, NY 10004
Telephone: (212) 820-7700
Email: jsandnes@skarzynski.com

Richard R. Patch (*pro hac vice forthcoming*)
Scott C. Hall (*pro hac vice forthcoming*)
Mari S. Clifford (*pro hac vice forthcoming*)
Alexandra M. Boxall (*pro hac vice forthcoming*)
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, CA 94104-5500
Telephone: (415) 391-4800
Facsmile: (415) 989-1663
Email: ef-rrp@cpdb.com
ef-sch@cpdb.com
ef-msc@cpdb.com
ef-amb@cpdb.com

*Counsel for Defendants Sling TV, L.L.C.*